UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMARA VRABEC<br>49 Skyward Drive<br>Danville, PA 17281,<br>    Plaintiff | :<br>:<br>: |
| v. | : Civ No. |
| | : |
| GEISINGER CLINIC<br>100 N. Academy Ave,<br>Danville, PA 17822 | :<br>: |
| GEISINGER MEDICAL CENTER<br>100 N. Academy Ave,<br>Danville, PA 17822<br>    Defendants | :<br>:<br>: |

## COMPLAINT

1. Plaintiff is Tamara Vrabec, M.D., residing at 49 Skyward Drive, Danville, PA 17821.

2. Defendant Geisinger Clinic ("Clinic") is a Pennsylvania domestic non-profit stock corporation providing physician services to Geisinger Medical Center, (Geisinger MC), a hospital and trauma center located at 100 N. Academy Ave, Danville, PA 17822.

3. Defendant Geisinger Medical Center is a hospital and trauma center located at 100 N. Academy Ave, Danville, PA 17822.

4. Geisinger Clinic shares the same address, same officers, and same directors as Geisinger Medical Center. Upon information and belief, the Clinic exclusively performs its services to Geisinger MC, and both entities assert supervision and control over Plaintiff and are joint-employers of the Plaintiff (collectively "Geisinger").

5. The acts and occurrence giving rise to this Complaint occurred at Geisinger MC in Danville, Pennsylvania.

## JURISDICTION AND VENUE

6. Plaintiff brings this cause of action for violations of Title VII, 42 U.S.C § 2000e, et seq, an amendments thereunder, including the Lily Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e-5(e)(3)(A), retaliation under Title VII, the Equal Pay Act of 1963, 29 U.S.C. § 206(d), the Pennsylvania Human Relations Act, 43 P.S. Labor § 951 et seq., and the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.

7. Jurisdiction in this case is based upon 28 U.S.C. §§ 1331 and 1343(a)(4) because the cause of action arises under the laws of the United States and Plaintiff seeks redress for violations of civil rights. The Court can hear the PHRA action pursuant to its supplemental jurisdiction.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the unlawful conduct alleged herein occurred in this judicial district and the entity Defendants hereto reside in this judicial district.

9. Plaintiff has completed all prerequisites to suit and has brought this action within the time allowed by law.

## NATURE OF THE CASE

10. Tamara Vrabec, M.D. ("Vrabec") is a female physician, age 59 and a board-certified, fellowship trained Retina Specialist and Vitreoretinal Surgeon.

11. Vrabec, an Ophthalmologist, was hired in 2007 at Geisinger as a Retina Specialist, in part due to her academic achievements and qualifications, and to address ongoing academic deficiencies at Geisinger.

2

12. Vrabec became the Director of Clinical Research and practicing Retina specialist.

13. At the time of her hire, Dr. Steven Marks, was employed as a Retina Specialist at Geisinger.

14. Vrabec at all times has had superior resume, achievements, and accolades than Dr. Marks. Vrabec was on staff at Jefferson Medical College and Wills Eye Hospital before coming to Geisinger. Vrabec was a Clinical Adjunct Professor of Ophthalmology at Temple Hospital.  As of 2017, no other physician in the Department was a professor.

15. Upon information and belief, Vrabec was hired at a lower rate of salary than that paid to Dr. Marks, despite her achievements and credentials.

16. At the time of her hire and at all times relevant, Dr. Marks has been functioning at over capacity with respect to patient load.

17. At all times relevant, Vrabec has been under scheduled and underutilized with respect to patient scheduling.

18. Vrabec had been practicing at a .6 full time equivalent, .5 of which was dedicated to patient scheduling and .1 to academic research, until Geisinger punished her as a result of a PIP and removed her academic time.

19. Physicians salaries at Geisinger are impacted by "utilization scoring" which measures, in part, numbers of patients seen, productivity and efficiency.

20. Vrabec has been under scheduled, underutilized and not been consistently given proper support staff to reach those goals.

21. Vrabec has requested for years that her open slots be filled and that she be given a "scribe" to manage patients more efficiently. Since 2008 and at all times relevant, Marks has had a full-time scribe and has been functioning at over capacity.

22. The scribe is available to enter information into the charts and to help the physician operate at better efficiency. Until March 2020, Vrabec was never assigned a trained full-time scribe to assist.

23. When Vrabec raised concerns of the scheduling she was told that there were some problems scheduling or accessing her "open blocks" in the patient scheduling system.

24. Vrabec brought to her Chairman's and departmental leadership's attention the preferential distribution of assignments and assistance given to Dr. Marks, and the lack of response as to filling her schedule and the issue has not been remediated.

25. Vrabec is the only female Retina Specialist in her Department.

26. Most recently Geisinger hired two younger male attending physicians as retina specialists for retina patients, one of whom has no sub-specialty training.

27. Vrabec was advised that due to budgetary reasons that the Department was going to have to change her research time to clinical time without assurances that these new clinical openings could or would be filled, further compromising her ability to meet RVU targets.

28. At the same time, Geisinger, which had already hired and planned to onboard within six (6) months a young male retina specialist upon completion of his fellowship, offered a "Medical Retina Specialist" position to a younger male resident who had no subspecialty training. Department leadership discussed schedule "smoothing" to distribute overall Retina clinical load and injection procedures over providers other than Dr. Marks.

29. Geisinger has made it all but impossible for Vrabec to appear to be highly productive, based on altered relative value unit ("RVU") scoring as compared to her clinical time. Geisinger continues to reduce her productivity with the hiring of two younger male physicians to perform retinal work, increasing number of clinical openings and increasing RVU targets without filling

the clinic openings, shifting patients from the schedule of Dr. Marks to the untrained "specialist," and younger male Retina Specialists, scheduling the specialist hired "exclusively" for another location to Vrabec's location, and failing to assign a full time scribe until this past year.

30. Upon information and belief, at all times relevant Marks, who would operate as her only "peer" comparator, is paid at a higher rate of pay per full time equivalent ("FTE") as measured by dollars paid per RVU generated and dollars paid per FTE worked. Upon information and belief, Dr. Roy Tuller, whose practice was bought by Geisinger in 2016, came in at the same rate of pay as Marks.  Despite her request for transparency, as is available in other Departments, her Department has refused to share that information.

31. On or about May 9, 2019, Vrabec through counsel raised the issues of equal pay and support and scheduling, and that Geisinger was discriminating against her in pay and assignments as a female.

32. She also raised concern about change in her job description evidenced by reduced protected research and academic time.

33. Vrabec also raised with Geisinger what appeared to be serious safety concerns related to an outbreak of infections which occurred in November 2018 resulting from intravitreal injections, which six infections occurred in Dr. Marks' patients.

34. Due to previous additional outbreaks of infections, in 2017, Vrabec requested approval to do a Quality Improvement study to address the high rate of infection, that was far in excess of the national average.

35. On or about January 2018 Vrabec secured approval to go forward with the study.

36. On or about January 2019, Vrabec requested and was granted Institutional Review Board ("IRB") approval to present the cases and submitted for presentation to an international meeting of The Retina Society an abstract of her results.

37. Upon receipt of the letter from counsel addressing her concerns, the Department began to retaliate against her.

38. Vrabec became the target of ongoing harassments and micro-managing of her practice and began to be pulled aside on unfounded complaints.

39. Ultimately, Geisinger, through her Department Chair, Herbert Ingraham, MD, began to freeze her out and refuse to meet with her concerning "care conversations" which were a required annual review to address concerns that physicians had as well as performance issues.

40. Ingraham refused to meet her for a care conversation by the system wide deadline, yet submitted documentation signed by him, indicating that he had done so, which was not true.

41. On July 24, 2019, Ingraham placed Vrabec on a written warning, a performance improvement plan ("PIP"), and took away all of her research time, and negatively impacted her pay. Further, as punishment for the warning, Geisinger demanded that she withdraw her presentation to The Retina Society, less than one week before it was scheduled to be given, causing her great harm and embarrassment. Finally, Geisinger forbade her from reporting any information about the infections in any future publication or presentation.

42. The pretextual reason for the PIP was that she had "accessed patient files" of Dr. Marks without approval to perform her research.  As stated above, that research project had been approved by the IRB and on its face it required access to patient files of "infected patients."

43. Further, Geisinger eliminated Vrabec's academic time and her research time, accelerating a change in her job description.  Vrabec lost her .1 "academic" time and now works .6 FTE clinical time.

44. Geisinger failed to follow internal protocol and appeal procedures to review the PIP, to the detriment and harm of Vrabec.  Upon information and belief, Geisinger denied Vrabec a full cost of living pay raise as a punishment for the pre-textual PIP.

45. Other male physicians have accessed Vrabec's patient files and have presented research with her patient data, and no discipline has been given.

46. Recently upon trying to address issues with Geisinger she was told by top management that "she could not have a lawyer and continue to work here" … to "either line up with the chairman or bring it on," directly threatening her for raising viable claims.

COUNT I – SEX DISCRIMINATION

47. Plaintiff incorporates by reference the allegations paragraphs 1-46 as though fully set forth herein.

48. Plaintiff is a female protected by Title VII against discrimination in her employment.

49. Defendants are employers pursuant to Title VII, 42 U.S. Code § 2000e, engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current year.

50. Defendants have discriminated against Plaintiff with respect to pay, support, discipline, and assignments in favor of male physicians.

51. Complaint has been discriminated against as a female with the failure of Geisinger to assign her a trained full time scribe from 2008 until March 2020. At all times Dr. Marks had a scribe, which assignment boosts his productivity and therefore impacts compensation.

52. At all times Plaintiff holds higher qualifications than the male physicians who receive a higher rate of pay and are able to meet incentives including annual cost of living increases.

53. Plaintiff has been diminished in job duties by the Defendants hiring of new male physicians, and diverting patient cases to them, which has impacted her patient schedule and productivity.

54. Upon information and belief, some of Marks patients have been transferred to other male retina specialists including the recently hired younger male non-trained "specialists" of inferior credentials, and not to Vrabec.

55. Plaintiff is protected as an employee who has been discriminated against on the basis of sex.

56. As a result of the discrimination based upon her sex, Plaintiff has suffered and continues to suffer harm.

WHEREFORE, the Plaintiff requests damages for lost wages, benefits and other compensatory damages, emotional pain and suffering, continued harm and damage to her career, punitive damages, costs and attorney's fees and any other award in law or equity that the Court deems proper.

## COUNT II – RETALIATION

57. Plaintiff incorporates by reference the allegations paragraphs 1-56 as though fully set forth herein.

58. Title VII, 42 U.S. Code § 2000e prohibits an employer from engaging in retaliation for engaging in protected activity.

59. Vrabec has engaged in protected activity by raising issues of sex discrimination internally and by filing a charge at the EEOC.

60. Vrabec brought these issues to her employer in raising that she did not get equal patient load, support, and that as a result her productivity and pay were impacted as compared to the male physicians.

61. Geisinger has systematically retaliated in scheduling, failing to assign a full time trained scribe between 2008 and 2020, denying pay increases, denying her a timely annual performance review and the opportunity to raise concerns with her supervisors, and placing her on a PIP in July of 2019, shortly after she engaged in protected activity to raise issues of discrimination.

62. Geisinger has impacted her pay, advancement, schedule, reputation, and caused her great harm and embarrassment in the academic community in demanding the withdrawal of her research from an international forum and prohibition to report the research in the future.

63. Geisinger is threatening that she "cannot have a lawyer" and still work here, to "get in line" or "bring it on" and continues to target her for unequal discipline.

64. Geisinger has prevented meaningful access to supervisors to address and remedy issues involving patient safety and equal treatment for pay and other benefits of employment under the law.  At one meeting with Dr. Malone about infections, he stated "I guess you have a conscience."

65. Geisinger has denied her pay raises in retaliation for raising discrimination and issues of patient safety.

WHEREFORE, the Plaintiff requests damages for lost wages, benefits and other compensatory damages, emotional pain and suffering, continued harm and damage to her career, punitive damages, costs and attorney's fees and any other award in law or equity that the Court deems proper.

## COUNT III – EQUAL PAY ACT

66. Plaintiff incorporates by reference the allegations paragraphs 1-65 as though fully set forth herein.

67. Plaintiff is performing work as a Retina Specialist and Retinal Surgeon for Defendants. Upon information and belief, Plaintiff has more qualifications and skills than other male Retina Specialists in the performance of her job.

68. Vrabec is the only female Retina Specialist, and has the highest qualifications, training, and skills than other male retina doctors.

69. Pursuant to the Equal Pay Act, Vrabec is doing "substantially equal work on the job, the performance of which requires substantially equal skill, effort, and responsibility as the jobs held by members of the opposite sex."

70. The job that she performs is "under similar working conditions."

71. Vrabec works a .6 full time equivalent to the males, however, is not being paid proportionately to her .6 FTE, nor permitted to reach productivity goals due to ongoing discrimination.

72. Upon information and belief, Vrabec is being paid at a lower wage than the males in her department, adjusted for FTE, without any just reasons other than her sex.

73. Defendants are in violation of the Equal Pay Act at all times relevant to the Complaint and ongoing, as to the pay differential between Vrabec and the male Retina surgeons.

74. Vrabec completed fellowship training, and is more highly trained, qualified and has more seniority than all male Retina surgeons in her Department, and with the exception of Dr. Marks, she has more seniority in the Department.

75. There is no legal justification for paying Vrabec less than the male Retina surgeons in her Department.

76. Defendants conduct was intentional and willful.  As a result of the actions of the Defendants, the Plaintiff has suffered and continues to suffer harm.

WHEREFORE, the Plaintiff requests damages for lost wages, benefits and other damages, liquidated damages, costs and attorney's fees and any other damages available by law or any award in law or equity that the Court deems proper.

### COUNT IV – PENNSYLVANIA HUMAN RELATIONS ACT

77. Plaintiff incorporates by reference the allegations paragraphs 1-76 as though fully set forth herein.

78. Plaintiff is an employee covered by the PHRA.

79. Defendants are employers as defined by the PHRA, which definition includes any person employing four or more persons within the Commonwealth.

80. The foregoing actions of Defendant constitute unlawful sexual discrimination and retaliation, in violation of the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951, *et seq.*

81. As a result of the actions of the Defendants, Plaintiff has suffered harm in the loss of pay, advancements, and other reputational harm.

WHEREFORE, the Plaintiff requests damages for lost wages, benefits and other compensatory damages, emotional pain and suffering, continued harm and damage to her career, punitive damages, costs and attorney's fees and any other award in law or equity that the Court deems proper.

## COUNT V - AGE DISCRIMINATION IN EMPLOYMENT

82. Plaintiff incorporates by reference the allegations paragraphs 1-81 as though fully set forth herein.

83. At three times when younger male Retina specialists were hired (2009, 2012, 2019), Geisinger decreased Vrabec's clinic volume and reallocated patients to younger male physicians' schedules to allow them to "ramp up."

84. Most recently in July and September 2019, although Vrabec's schedule has not been filled, two younger males were hired as Retina specialists, causing reallocation of patients, and further impacting her patient schedule and therefore her pay.

85. One younger male physician "exclusively hired" for a satellite location has been providing services at Vrabec's location, and therefore diverting additional patient hours. The second younger male physician, who has no subspecialty fellowship training qualifications, has been hired as a "specialist" and is seeing subspecialty patients at same location, and diverting work from Vrabec.

86. Vrabec is more qualified than these two physicians to provide the services.

87. Vrabec, age 59, is in the protected class under the Age Discrimination in Employment Act, 29 U.S. Code § 620, et seq.

88. It is believed and averred that she is being discriminated against in the terms and conditions of her employment due to age.

89. The male physicians hired to provide services are younger than Vrabec, not in the protected class, and substantially less qualified to provide the services.

90. Plaintiff is protected as an employee who has been discriminated against on the basis of age.

Case 4:21-cv-00804-MWB   Document 1   Filed 05/03/21   Page 13 of 14

91. Plaintiff has suffered an adverse employment action due to her age, in that the younger male employees have been assigned the patient caseloads, and cases have been diverted from her, affecting her pay, and opportunities for advancement.

WHEREFORE, the Plaintiff requests damages for lost wages, benefits and other compensatory damages, liquidated damages, costs and attorney's fees and any other award in law or equity that the Court deems proper.

A JURY TRIAL IS DEMANDED.

Respectfully submitted.

_____
Kimberly H, Ashbach, Esq.
708 Abbeydale Court
Ambler, PA 19002
267-468-0613
267-468-0614 (fax)
kim@ashbachlaw.com
Attorney for Plaintiff

13

I, Tamara Vrabec, MD, state that the statements herein are true an correct to the best of my knowledge information and belief, and that any false statements made herein are subject to the penalties of perjury under 28 U.S. Code § 1746, relating to unsworn statements to authorities.

_____
Tamara Vrabec