IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMARA VRABEC, | No. 4:21-CV-00804 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| GEISINGER CLINIC, | |
| Defendant. | |

**MEMORANDUM OPINION**

MAY 7, 2024

## I.  PROCEDURAL BACKGROUND

Plaintiff Tamara Vrabec initiated this suit with the filing of a Complaint against Defendants Geisinger Clinic and Geisinger Medical Center on May 3, 2021, asserting five claims for relief: sex discrimination in violation of Title VII (Count I), retaliation in violation of Title VII (Count II), violation of the Equal Pay Act (Count III), sex discrimination and retaliation in violation of the Pennsylvania Human Relations Act (Count IV), and age discrimination (Count V).[1] On November 13, 2023, Defendants filed a Motion for Summary Judgment,[2] which Vrabec opposed only as to Geisinger Clinic.[3] On April 4, 2024, the Court granted Defendants' Motion in its entirety as to Geisinger Medical Center, and granted in part and denied in part the Motion as to Geisinger Clinic.

---

[1]  Compl., Doc. 1.
[2]  Mot. Summ. J., Doc. 34.
[3]  Opp'n. Mot. Summ. J., Doc. 47, at 5.

On April 18, 2024, Geisinger Clinic (referred to hereinafter simply as "Geisinger") timely moved for reconsideration of the Court's finding that it had waived a statute of limitations defense as to Vrabec's Equal Pay Act claims.[4] For the reasons below, the Court will grant Geisinger's Motion.

## II. RELEVANT FACTUAL BACKGROUND[5]

Dr. Herbert Ingraham, the chairman of Geisinger Clinic's Department of Ophthalmology, recruited and hired Plaintiff Dr. Tamara Vrabec to join the Department as a retina specialist in 2007 at a salary of $180,000.[6] Though Vrabec had previously been employed by Geisinger in 1992,[7] Ingraham was unwilling to offer Vrabec a salary equivalent to Dr. Steven Marks, who had been hired in 1995 and worked continuously for Geisinger since that time.[8] Vrabec began her employment with Geisinger at a 0.6 Full-Time Equivalent ("FTE"), and has fluctuated between a 0.6 and 0.7 FTE during her tenure.[9] From Vrabec's hire until 2016, Geisinger employed a compensation structure in which a physician's salary included a base salary which made up 80% of a physician's compensation and incentive pay accounting for the remaining 20%.[10]

---

[4] Mot. for Recons., Doc. 56.
[5] A more detailed recitation of the factual background of Vrabec's claims can be found in the Court's Opinion regarding the disposition of Geisinger's Motion for Summary Judgment. Apr. 4, 2024, Mem. Op., Doc. 53 Section I.
[6] Def. Mot. Summ. J. Statement of Material Facts ("SMF"), Doc. 35, and Pl. Ans. to Def. SMF ("ASMF"), Sealed Doc. 47-1 ¶¶ 1-3.
[7] ASMF ¶ 4.
[8] SMF and ASMF ¶ 4. *See also* Pl. ASMF Ex. F, Sealed Doc. 47-3 at Appx 294 (Marks hire date).
[9] SMF and ASMF ¶¶ 8-9.
[10] *Id.* ¶ 36.

In 2016, Geisinger transitioned to a "base salary model without incentives."[11] All physicians whose 2015 total compensation fell below the 50th percentile in their subspecialty was "stepped up" to that level—$518,419 at 1.0 FTE—as part of the transition.[12] The base salary for physicians who were above the 50th percentile was determined by combining their 2015 incentive pay with the 2016 base salary.[13] Vrabec, whose total 2015 compensation was $435,728 scaled to 1.0 FTE, fell into the former camp and Marks, whose total 2015 compensation was $567,757 scaled to 1.0 FTE, into the latter.

In short, it is uncontroverted that when Vrabec was hired in 2007 at a salary of $180,000, she was paid less than Marks. How much less exactly remains a mystery—there is nothing in the record before the Court regarding Marks' compensation until 2015 when he was paid 30% more than Vrabec. Then, when Vrabec's salary was stepped up to the new salary floor in 2016, the pay disparity shrank to 9%.

## III.   DISCUSSION

The United States Court of Appeals for the Third Circuit has held that "[t]he purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence."[14] "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following

---

[11]  *Id.* ¶ 40.
[12]  *Id.*
[13]  SMF ¶ 41; Pl. ASMF Ex. F. Appx. 292-295.
[14]  *Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237 (3d Cir. 2010) (quoting *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985)).

grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[15]

A motion for reconsideration may also be appropriate "where the court has misunderstood a party or has made a decision outside the adversarial issues presented to the court by parties, or has made an error not of reasoning, but of apprehension."[16]

## IV.   ANALYSIS

The crux of Geisinger's Motion is that the Court reached the issue of the statute of limitations despite it not being raised by either party. Geisinger suggests that there was no need for it to raise the defense because it was not a basis for Geisinger to dismiss Vrabec's EPA claim. As Vrabec was a Geisinger employee when she filed her suit, and remains a Geisinger employee today, the statute of limitations would not bar her claims.

However, as the Court observed in its prior Memorandum Opinion, the transition to the 2016 compensation structure, which significantly narrowed the pre-existing pay disparity between Marks and Vrabec, occurred before the three-year recovery period for EPA claims.[17] Therefore, while Geisinger could not have raised the EPA as a

---

[15] *Id.* (quoting *Max's Seafood Cafe*, 176 F.3d at 677. *Accord North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995).

[16] *Lombardo v. Flynn*, No. 4:11-CV-2220, 2018 WL 11473357, at *2 (M.D. Pa. Oct. 5, 2018) (internal quotations and citations omitted).

[17] 29 § U.S.C. 225(a). *See also E.E.O.C. v. State of Del. Dept. of Health and Soc. Services*, 865 F.2d 1408, 1418 n.14 (3d Cir. 1989) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988) ("The Equal Pay Act is a part of the FLSA and the same statute of limitations is applicable.").

defense to any pre-2016 conduct, it could have raised it as a defense against recovery. Put differently, Geisinger would need to justify only the 9% difference between Marks and the minimum salary floor, rather than the entire 30% disparity. The burden imposed by the former is plainly far less than that of the latter. Accordingly, on the facts of this case, the issue of the statute of limitations period seemed to the Court to be unavoidable.

Instead, Geisinger defended the disparity between Vrabec and Marks in its entirety. It appears that Geisinger simply took for granted that Vrabec had conceded to the applicability of the limitations period during discovery. On August 23, 2023, counsel for Vrabec, though acknowledging that "[u]nder the Equal Pay Act, [Vrabec is] entitled to three (3) years back pay if the violation is willful," objected to Geisinger's refusal to produce compensation records prior to the limitations period.[18] Vrabec's opposition to the pending Motion appears to be the first time in which she has argued that she is entitled to backpay prior to the limitations period.[19]

Therefore, this is the sort of case where the Court "has made an error not of reasoning, but of apprehension."[20] Accordingly, Geisinger's argument that it (and Vrabec for that matter) should be afforded the opportunity to squarely address the issue in pre-trial motions is well taken. The Court does not understand Geisinger to be requesting that the Court revisit its reasoning regarding the denial of summary judgment

---

[18] *See* Aug. 23, 2023 Letter from K. Ashbach to J. Pickell, Doc. 57-4, at 1.
[19] Notably, Vrabec did not move to compel the production of any of the withheld documents. Doc. 58, at 7 n.1.
[20] *Lombardo*, 2018 WL 11473357, at *2.

in relevant part, nor will it do so. Rather, the parties may, and the Court would expect them to, argue the issue during the time for filing pre-trial motions, which will be determined when the Court schedules the matter for a date certain trial.

## V.     CONCLUSION

For the foregoing reasons, Defendant Geisinger Clinic's Motion for Reconsideration is granted. As the granting of Geisinger's Motion has no effect on the Court's disposition of Geisinger's Motion for Summary Judgment as stated in the Court's Order of April 4, 2024, that Order remains in effect.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge