**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TAMARA VRABEC, | No. 4:21-CV-00804 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| GEISINGER CLINIC, | |
| Defendant. | |

**MEMORANDUM OPINION**

**SEPTEMBER 10, 2024**

Currently pending before the Court is Plaintiff Tamara Vrabec's Motion to Compel discovery. For the reasons below, that Motion is denied.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]

Dr. Herbert Ingraham, the chairman of Geisinger Clinic's Department of Ophthalmology, recruited and hired Plaintiff Dr. Tamara Vrabec to join the Department as a retina specialist in 2007.[2] Geisinger initially offered Vrabec a base salary of $163,000, which Vrabec negotiated up to $180,000.[3] Though Vrabec had

---

[1]   This abbreviated factual background is largely derived from the parties' statements of fact filed as part of the parties' briefing on Geisinger's Motion for Summary Judgment. A more detailed recitation of factual background can be found in the Court's Opinion regarding the disposition of that motion. Apr. 4, 2024, Mem. Op. ("MSJ Op."), Doc. 53, Section I.

[2]   Def. Statement of Material Facts ("SMF"), Doc. 35, and Pl. Ans. to Def. SMF ("ASMF"), Sealed Doc. 47-1 ¶ 1.

[3]   *Id.* ¶¶ 2-3. Vrabec appears to deny that she negotiated her salary to $180,000 because she recalls that she had asked for, and Geisinger refused an even higher salary. ASMF ¶ 2. That Vrabec may not have gotten everything she asked for does not mean that salary negotiations did not take place or that she was not successful in securing a higher salary than Geisinger's initial offer.

previously been employed by Geisinger in 1992,[4] Ingraham was unwilling to offer Vrabec a salary equivalent to Dr. Steven Marks, who had been hired in 1995 and worked continuously for Geisinger since that time.[5] Vrabec began her employment with Geisinger at a 0.6 Full-Time Equivalent ("FTE"), and has fluctuated between a 0.6 and 0.7 FTE during her tenure.[6] From Vrabec's hire until 2016, Geisinger employed a compensation structure in which a physician's salary included a base salary which made up 80% of a physician's compensation and incentive pay accounting for the remaining 20%.[7]

In 2016, Geisinger transitioned to a "base salary model without incentives" (the "2016 Plan").[8] All physicians whose 2015 total compensation fell below the 50th percentile in their subspecialty was "stepped up" to that level as part of the transition.[9] The base salary for physicians who were above the 50th percentile was determined by combining their 2015 incentive pay with the 2016 base salary.[10] Two physicians in the Department of Ophthalmology's Retinal Surgery subspecialty group (the "Group"), Marks and Dr. Roy Tuller, fell into the latter group and had

---

[4]   *Id.* ¶ 4.
[5]   SMF and ASMF ¶ 4. *See also* Pl. Ex. F, Sealed Doc. 47-3 at Appx 294 (Marks hire date).
[6]   SMF and ASMF ¶¶ 8-9.
[7]   *Id.* ¶ 36.
[8]   *Id.* ¶ 40.
[9]   *Id.*
[10]  SMF ¶ 41; Pl. Ex. F. Appx. 292-295. As Geisinger suggests, it appears that Vrabec has misread the salary schedule which, in her defense, is hardly a model of clarity. The 2016 base salary for all physicians is the greater of the 50th percentile benchmark or that physician's 2015 salary including incentives.

their 2016 base salary set accordingly.[11] The rest of the Group—Vrabec, as well as Drs. Mouhammed Abbuattieh, Christopher Cessna, and Benjamin Hale—had their base salaries "stepped up" to the 50th percentile Annualized Base Salary of $518,419 at 1.0 FTE.[12]

In its April 4, 2024 Opinion and Order granting in part and denying in part Geisinger's Motion for Summary Judgment, the Court found that there was no evidence that Vrabec was unfairly compensated under the 2016 Plan.[13] However, the Court found that Geisinger failed to meet its burden to demonstrate the applicability of one of the four affirmative defenses specified in the Equal Pay Act as to any disparities in compensation prior to 2016.[14] Accordingly, the Court denied Geisinger's Motion for Summary Judgment as to the continuing impact of any improper pay disparities prior to the 2016 Plan.[15] Geisinger's Motion was also denied as to Vrabec's claims of retaliation.[16]

Following disposition of Geisinger's Motion for Summary Judgment and subsequent Motion for Reconsideration, this case was referred to Chief Magistrate

[11] *Id.*
[12] *Id.*
[13] MSJ Op. Section IV.A.2.
[14] *Id.* Section IV.A.1.
[15] The Court denied summary judgment as to Vrabec's claims of discriminatory compensation prior to 2016 and the continuing impact of such disparate compensation. Apr. 4, 2024 Ord., Doc. 54. Upon reconsideration, the Court clarified that any relief Vrabec is entitled to is limited to the continuing impact of any discriminatorily disparate compensation prior to 2016. May 7, 2024 Mem. Op. and Ord., Docs. 59-60.
[16] MSJ Ord. ¶ 3(e).

Judge Daryl F. Bloom for a settlement conference.[17] The parties engaged in a settlement conference on July 9, 2024, with another scheduled for September 12, 2024. Between those two conferences, Vrabec filed a Motion to Compel. After Vrabec filed her Motion, but before she filed her brief in support, Geisinger filed a brief in opposition.[18]

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Such discovery must take into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit."[19] "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action."[20]

The party filing a motion to compel bears the initial burden of "demonstrat[ing] the relevance of the information sought to a particular claim or

---

[17]   Doc. 64; May 20, 2024 Verbal Ord.
[18]   Opp'n., Docs. 70, 72; Supp. Br., Doc. 73.
[19]   Fed. R. Civ. P. 26(b)(1).
[20]   Fed. R. Evid. 401.

defense. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper."[21] "Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with the fullest possible knowledge of the issues and facts before trial."[22]

A party filing a motion to compel after the close of discovery must also show "good cause" to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4).[23] The decision whether to do so is within a district court's broad discretion to manage discovery.[24] The United States Court of Appeals for the Third Circuit has instructed that the "good cause" inquiry "focuses on the moving party's burden to show due diligence."[25] Accordingly, "if the moving party was not diligent, there is no 'good cause' for modifying the scheduling order and the inquiry should end."[26]

---

[21] *Osagie v. Borough of State College*, 586 F. Supp. 3d 314, 321 (M.D. Pa. 2022) (quoting *Miller v. McGinley*, 2022 WL 212709, at *2 (M.D. Pa. Jan. 24, 2022)).

[22] *Id.* (citing *Naranjo v. T. Walter*, No. 1:20-CV-918, 2021 WL 4226062, at *3 (M.D. Pa. Sept. 16, 2021); *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

[23] *See In Re Chocolate Confectionary Antitrust Litigation*, No. 1:08-MDL-1935, 2013 WL 3873225 at *2 (M.D. Pa. July 25, 2013) (Connor, J.) (citing *Aamco Transmissions, Inc. v. Marino,* 1991 WL 40336 (E.D. Pa. Mar. 19, 1991)) (discussing requests to reopen discovery)

[24] *LeBoom v. Lancaster Jewish Cmty. Ass'n,* 503 F.3d 217, 235 (3d Cir.2007); *Sempier v. Johnson & Higgins,* 45 F.3d 724, 734 (3d Cir.1995).

[25] *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *accord Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020)

[26] *In re Geisinger System Services and Evangelical Community Hosp. Healthcare Workers Antitrust Litig.*, No. 4:21-CV-00196, 2024 WL 115981, at *1 (M.D. Pa. Jan. 10, 2024) (citing *Banks v. City of Philadelphia*, 309 F.R.D. 287, 290 (E.D. Pa. 2015); *Chancellor v. Pottsgrove Sch. Dist.,* 501 F.Supp.2d 695, 701 (E.D.Pa.2007); *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992).

Rule 26(e)(1)(A) requires parties to supplement or correct their responses to prior discovery responses, including requests for production, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." The obligation to supplement discovery responses continues beyond the close of discovery.[27]

## III.   DISCUSSION

Vrabec seeks to compel production of "a small tranche of pay and salary documents dating back to the date of Plaintiff's hire, in 2007, professorship letters, and documents referencing graduate medical education money received (as a result of Vrabec's hire)."[28] During discovery, Vrabec requested documents regarding her compensation and that of her colleagues dating back to her hire in 2007.[29] Geisinger agreed only to produce documents dating back to 2015, arguing that any earlier documents were irrelevant as they predated the Equal Pay Act look-back period.[30]

Geisinger does not meaningfully dispute that its objection to producing those documents was without merit. Instead, it faults Vrabec for failing to timely seek

---

[27] *See* Fed. R. Civ. P. 26(e), Adv. Comm. Notes, 1993 Amendments ("Supplementations "should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches.")

[28] Doc. 73, at 3.

[29] *E.g.*, Doc. 69 ¶¶ 14-15.

[30] *Id.*

those documents. As Geisinger notes repeatedly, Vrabec's Motion comes "almost an entire year after the close of discovery, over four months after Geisinger's MSJ was granted in part, and three months after Geisinger's MFR was granted to file her Motion to Compel."[31] Vrabec responds that, while the parties agreed during discovery that pay documents dating back to 2015 was appropriate, the Court's Memorandum Opinion denying Geisinger's Motion for Summary Judgment in part presents "special circumstances" warranting the reopening of discovery.[32] Vrabec suggests that the Court's prior Opinion "broadened the scope of what Plaintiff could prove in establishing her claim" when it held that Vrabec "could demonstrate Equal Pay Act violations that were predicated on behaviors back in 2007."[33] Vrabec also suggests that Geisinger is obliged to make additional productions per its obligation under Rule 26 to supplement its response if it learns that it is incomplete notwithstanding the close of discovery.

The Equal Pay Act was famously amended following the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*[34] The plaintiff in *Ledbetter* maintained that, while her salary had been set prior the Equal Pay Act's statute of limitations, her claims were nevertheless timely because the discriminatory setting

---

[31]   Doc. 70, ¶ 17. *Accord id.* ¶¶ 3, 18-21, 23-32, 34-35.
[32]   Doc. 73, at 7.
[33]   *Id.*
[34]   550 U.S. 618 (2007).

of her salary was "carried forward" with each new paycheck.[35] The Supreme Court rejected that argument, holding that a new "violation does not occur and a new charging period is not triggered when an employer issues paychecks" under a facially nondiscriminatory compensation plan.[36]

In the first act he signed as President, Barack Obama signed the Lilly Ledbetter Fair Pay Act of 2009 into law.[37] The Fair Pay Act of 2009 "clarif[ied] that a discriminatory compensation decision that is unlawful . . . occurs each time compensation is paid pursuant to the discriminatory compensation decision."[38] Shortly after the passage of the Fair Pay Act, the United States Court of Appeals for the Third Circuit observed:

> The purpose of the FPA "was to reinstate the law regarding the timeliness of pay compensation claims as it was prior to the Ledbetter decision, which Congress believed undermined statutory protections against compensation discrimination by unduly restricting the time period in which victims could challenge and recover for discriminatory compensation decisions."[39]

Following the passage of the Fair Pay Act then, a Title VII pay discrimination claim is timely as to paychecks received within the statute of limitations "if they reflect a 'periodic implementation' of a previously made intentionally

---

[35]   *Id.* at 624-25.
[36]   *Id.* at 637.
[37]   Pub. L. No. 111-2, 123 Stat. 5 (codified as amended in scattered sections of 29 and 42 U.S.C.).
[38]   *Id.*
[39]   *Noel v. The Boeing Co.*, 622 F.3d 266 (3d Cir. 2010) (quoting *Mikula v. Allegheny Cnty. Of PA*, 583 F.3d 181, 184 (3d Cir. 2009)).

discriminatory employment decision or 'other practice.'"[40] Thus, Vrabec's assertion that the Court was breaking new ground in its disposition of Geisinger's Motion for Summary Judgment is not well taken. The Court did not broaden the scope of relief available under the law; it applied the law as it has been for the past fifteen years.

For their part, the parties spilled a fair amount of ink at summary judgment arguing over whether the setting of Vrabec's salary in 2007 was unlawful.[41] It can hardly be said, then, that Vrabec did not understand that the setting of her salary relative to her peers over a decade before the look-back period was relevant to her claims until the Court ruled on Geisinger's motion for summary judgment.

Accordingly, Vrabec has not identified special circumstances which warrant the granting of a motion to compel after the close of discovery.[42]

Even if the Court were to find that such special circumstances did exist, the Court nevertheless would deny Vrabec's Motion as untimely on the basis that she waited to file it until four months after the Court disposed of Geisinger's Motion for Summary Judgment and three months after the Court disposed of the Motion for Reconsideration. In both Opinions, the Court explicitly noted "[i]t appears that

---

[40] *Mikula*, 583 F.3d at 186 (citing *Hildebrandt v. Illinois Dept. of Nat. Resources*, 347 F.3d 1014, 1029 (7th Cir. 2003); 42 U.S.C. § 2000e-5(3)(A)).

[41] *See* Doc. 39, at 27-29 (Geisinger's brief in support of summary judgment discussing Vrabec's 2007 salary negotiations); Doc. 45, at 8-10 (Vrabec's opposition discussing same); Doc. 49, at 5-6 (Geisinger's reply discussing same); Doc. 52, at 5-6 (Vrabec's sur-reply discussing same).

[42] *Frazier v. SCI Med. Dispensary Dr. + 2 Staff Members*, No. CIV.A. 1:07-0194, 2009 WL 136724, at *2 (M.D. Pa. Jan. 16, 2009) (citing *Flynn v. Health Advocate, Inc.*, Civ. A. No. 3–3764, 2005 WL 288989 (E.D. Pa. Feb.8, 2005)).

Geisinger did not produce any pre-2016 salary records for Marks or any other of Vrabec's colleagues"[43] and that "Vrabec did not move to compel the production of any of the withheld documents."[44] The Court, then, flagged the issue not once, but twice. Vrabec's response was to do nothing. She suggests that Geisinger's continuing obligation to update its discovery responses obliged it to supplement its productions. Perhaps. But, when Geisinger stood on its prior objections and refused to do so, Vrabec's recourse was to file a Motion to Compel. Vrabec's lack of diligence in doing so is sufficient to end the inquiry and deny her motion.[45]

The Court is also unmoved by Vrabec's insistence that Geisinger would not suffer any prejudice if the Court were to grant her Motion. While it is true that no trial has been scheduled in this case, following the Court's disposition of Geisinger's Motion for Reconsideration, it hosted the parties for a telephonic status conference and referred the case to a Magistrate Judge for settlement negotiations.[46] The parties prepared, and Chief Magistrate Judge Bloom reviewed settlement memoranda ahead of a multi-hour settlement conference on July 10, 2024.[47] Magistrate Judge Bloom then scheduled a second settlement conference.[48] The parties again completed

---

[43] MTD Op. 13 n.62.
[44] MFR Op. 5 n.19.
[45] *Supra* n.26.
[46] Docs. 61-64.
[47] Docs. 65-67.
[48] Doc. 74.

settlement memoranda for Magistrate Judge Bloom's review.[49] Geisinger and the Court have spent time and resources preparing for settlement negotiations, only for Vrabec to attempt to redevelop her case under a new (to her) theory.[50] The Court is unwilling to permit Vrabec "to reverse course [and] begin again at square one."[51]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff Tamara Vrabec's Motion to Compel is denied.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[49] *Id.* (ordering updated settlement memoranda to be completed by September 9, 2024).

[50] While a lesser consideration, the Court notes that, following the elevation of Judges Karoline Mehalchick and Joesph Saporito, Jr. from Magistrate Judges to District Court Judges, the finite resource of attention from a Magistrate Judge has become even more scarce.

[51] *See Summy-Long v. Pennsylvania State U.*, No. 1:06-CV-1117, 2015 WL 5924505 (M.D. Pa. Oct. 9, 2015) (denying motion to compel filed at close of discovery where plaintiff filed a year-and-a-half after receiving defendant's objections).