# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMARA VRABEC, | No. 4:21-CV-00804 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| GEISINGER CLINIC, and GEISINGER MEDICAL CENTER, | |
| Defendants. | |

# MEMORANDUM OPINION & ORDER

### AUGUST 11, 2025

## I.    BACKGROUND

Plaintiff Tamara Vrabec filed a five-count complaint against Defendants Geisinger Clinic and Geisinger Medical Center in March 2021, pleading violations of Title VII's prohibitions on sex discrimination and retaliation, the Equal Pay Act, the Pennsylvania Human Relations Act, and the Age Discrimination in Employment Act.[1] Defendants filed an answer in July 2021.[2] I granted in part and denied in part Defendants' motion for summary judgment in April 2024.[3] I granted Geisinger Medical Center's motion in full and dismissed it from the case, but only granted Geisinger Clinic's motion as to Vrabec's Count I, III, IV, and V claims of

---

[1]  Complaint, Doc. 1.
[2]  Answer, Doc. 7.
[3]  Order, Doc. 54.

discriminatory compensation under Geisinger Clinic's 2016 Compensation Policy.[4] I granted Geisinger Clinic's motion for reconsideration in March 2024, holding that Geisinger Clinic had not waived its statute of limitations defense; the Order had no effect on the Court's disposition of the summary judgment motion.[5] Vrabec filed a motion to compel discovery in August 2024, which this Court denied due to the lack of good cause to amend the scheduling order.[6]

In April 2025, Vrabec filed the pending motion to amend or correct the complaint.[7] The motion is now ripe for disposition. For the reasons stated below, it is denied.

## II.   ANALYSIS

Vrabec seeks to amend the scheduling order to, in turn, amend her complaint. Her briefing reveals three aims in amending her complaint: reviving previously dismissed claims, introducing new claims, and reopening fact discovery.[8] But Vrabec's lack of due diligence means that she has no good cause to amend the scheduling order, and her argument that Defendants violated their discovery obligations in bad faith is belied by the record. The same lack of diligence precludes the Court from reopening discovery.

---

[4] *Id.*
[5] Memorandum Opinion, Doc. 59 at 6; Order, Doc. 60.
[6] Order, Doc. 76.
[7] Motion to Amend/Correct Complaint, Doc. 83.
[8] Motion to Amend Complaint, Doc. 83 at 9, 2, 4.

Twenty-one days after service and in the absence of the opposing party's written consent, Federal Rule of Civil Procedure 15(a)(2) requires that parties receive leave of court before amending a pleading and specifies that the "court should freely give leave when justice so requires." Less forgiving is Federal Rule of Civil Procedure 16(b)(4), which provides that a "schedule may be modified only for good cause and with the judge's consent." "A party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard."[9]

"Rule 16(b)(4) focuses on the moving party's burden to show due diligence."[10] "Good cause in this context is established when the party seeking the extension can show that the deadlines set forth in the scheduling order cannot reasonably be met despite the diligence of the party seeking the extension. Good cause may also be satisfied if the movant shows that the inability to comply with a scheduling order is due to any mistake, excusable neglect or any other factor which might understandably account for failure to counsel to undertake to comply with the Scheduling Order."[11] One such circumstance arises where "the movant learns of the facts supporting [the motion] after expiration of the relevant filing deadline."[12]

---

[9] *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).
[10] *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010).
[11] *Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553, 558-59 (D.N.J. 2022) (cleaned up).
[12] *Lord v. Consolidated Rail Corp. (In re Paulsboro Derailment)*, Civil No. 12-7747, 2015 U.S. Dist. LEXIS 142119, at *9 (D.N.J. Oct. 19, 2015) (quoting *United States v. Cohan*, Civ. No. 3:11-0412, 2012 U.S. Dist. LEXIS 144603, at *1 (D. Conn. Oct. 5, 2012)).

The parties agree that any request to amend the complaint would be untimely, and therefore barred, pursuant to the scheduling order issued in this case under Rule 16.[13] But Vrabec now argues that she was prevented from making this motion because of Defendants' conduct.[14]

In the Court's resolution of the prior summary judgment motion, a key issue was that Vrabec had been less productive than her comparator physicians, which contributed to defeating her Title VII sex discrimination claim. Vrabec now argues that she has good cause to modify the scheduling order due to "dilatory and willful conduct of the Defendant in withholding discoverable information relevant to the most important issue" in this case.[15] She contends that she learned for the first time on September 3, 2024 that:

> The Department built templates for two male physicians, Drs. Hale and Marks, which allowed the Department to "overbook" the allotted time slots twice the number of patients needing "injections," or new patients thus allowing male physicians to significantly boost their productivity. Injections are high "productivity" procedures based on their "RVU" allotted values, with patients having an ongoing need for return.[16]

---

[13] It is not clear whether the scheduling order must be amended to permit an amended complaint in this case because the parties cited no scheduling order setting a deadline for filing amended complaints. Nevertheless, in briefing—and in the title of Vrabec's motion itself—the parties *agree* that Vrabec must amend the scheduling order to amend her complaint. Rather than analyzing the appropriateness of applying Rule 16 to this motion, therefore, the Court follows the parties' framing of the issue. *See United States v. Maury*, 695 F.3d 227, 256 (3d Cir. 2012) (under invited error doctrine, a party cannot complain of alleged errors invited or induced by that party.).The Court therefore applies Rule 16, but notes that the court would not permit Vrabec to file this amended complaint anyways under Rule 15.

[14] As Defendants note, Vrabec's diligence would be in question even if her bad faith discovery allegations were true because she alleges to have discovered this information in November 2024 yet waited until April 2025 to filer her motion.

[15] Motion to Amend, Doc. 83 at 3.

[16] *Id.* at 3.

4

Vrabec's RVU value increased after requesting and receiving similar overbook appointments, but she did not receive a raise.[17] Vrabec now argues that Defendants withheld the evidence of Drs. Hale and Marks' overbooking schedules in bad faith, justifying an amendment of the scheduling order to amend the complaint and reopen discovery.

Vrabec points to the role of injections in Drs. Hale and Marks's schedules generally, but never identifies a document or otherwise states what she believes was withheld in bad faith during discovery.[18] The specific discovery violation Vrabec alleges is therefore unclear. Regardless, the Court sees no cause to conclude that there was bad faith noncompliance with discovery obligations in this case.

Vrabec's motion does highlight several objections Defendant responded to various interrogatories and requests for production with.[19] Yet Vrabec never timely raised deficiencies with Defendants' interrogatory responses or requests for production of documents—Vrabec only identified an alleged deficiency in *one*

---

[17] *Id.* at 3-4.

[18] Motion to Amend, Doc. 83 at 3. For example—is Vrabec arguing that she was never told about overbooking practices generally? The overbooking practices of Drs. Marks and Hale specifically? (deposition transcripts imply that she did receive these because her attorney referenced such schedules, *see* Dep. of J. Karchner, Doc. 44-1 at 46:20-47:5 ("Q. And when we are talking about over-books, I see repeatedly – does Dr. Marks allow over-books? A. Yes."))? The high efficiency of injection procedures generally? That Drs. Marks and Hale specifically overbooked a high volume of injection procedures, as opposed to other procedures?

[19] Motion to Amend, Doc. 83 at 5-7.

document production in June 2023, and never raised such deficiencies through a motion to compel.[20]

Moreover, Vrabec never filed a reply brief as to the pending motion. So the Court assumes she does not contest the veracity of the contents and timing of discovery production set out in Defendants' brief in opposition. Taking that information as true, Defendants did not withhold information pertinent to overbooking in bad faith, and Vrabec had sufficient information to file a motion to compel if she wished to do so.

First, Defendants certainly did not withhold information relating to overbooking practices generally[21] and Vrabec knew about Defendants' general overbooking practices well before September 2024. Defendants' June 2022 document production included a November 23, 2021 email containing the inputted schedule preferences of thirteen providers.[22] According to Defendants, some of these providers were noted to permit overbooked appointments with approval in the produced email, including Dr. Mouhamed Abuattieh, who is highlighted in Defendants' brief in opposition as an example.[23] That document production also included an email describing Dr. Hale's schedule as "so full" that Human Resources

---

[20] Brief in Opposition, Doc. 85 at 4-5.
[21] *See* Motion to Amend, Doc. 83 at 4 (claiming that "the evidence of double booking was never produced by the Defendant"). It is unclear whether this refers to double booking practices *generally*, or the specific practice Drs. Hale and Marks had of overbooking injections.
[22] Brief in Opposition, Doc. 85 at 10.
[23] *Id.*

would "send him msgs to over book."[24] An additional deposition, requested by Vrabec 10 days before the fact discovery deadline, elicited testimony that "if a physician requests a change, those changes will be incorporated" into their schedule template, and that providers can view their ongoing schedules and ask for corrections.[25] Moreover, emails sent by Vrabec herself in 2015 and 2018, as well as Vrabec's own February 2024 summary judgment briefings, acknowledge that appointment slots may be overbooked.[26]

Second, Vrabec has not shown that Defendants withheld the overbooking practices of Drs. Marks and Hale in bad faith, though they do not even make clear what, specifically, was produced as to these physicians. Vrabec claims that Jill Karchner concealed that she had overbooked male physicians (specifically Drs. Marks and Hale) in her deposition,[27] but when asked, Karchner readily agreed that

---

[24] *Id.* at 11.
[25] Tara McLaurin Deposition Transcript, Doc. 85-2 at 19:1-9, 82:10-83:17.
[26] *See* Brief in Opposition, Doc. 85 at 12; Answer to Statement of Facts, Doc. 44 ¶23 ("According to Karchner, Vrabec allowed overbooking and never turned down work."). It is not clear whether Dr. Hale's schedule was produced in discovery. But the request for production highlighted in Vrabec's brief does not clearly indicate that it is seeking Dr. Hale's schedule, such that failing to produce it would have amounted to bad faith; and even making this production request arguably shows that Vrabec had sufficient knowledge to file a motion to compel if she wanted to. *See* Motion to Amend, Doc. 83 at 6 ("Plaintiff's Request for Production 17: [Produce] any documents that refer or relate to an effort to increase productivity to Dr. Benjamin Hale with the assignment of patients and scribes.").
[27] Motion to Amend, Doc. 83 at 8 ("Jill Karchner, Ophthalmology Department Operations Manager, never revealed in her deposition that she was intentionally double booking the male physicians, after acknowledging that Plaintiff brought concerns with her fil rate to her repeatedly over the years . . . . What Karchner did not reveal in her deposition that she was doubling the procedures for Drs. Marks and Hale. Plaintiff learned for the first time in September that Drs. Hales and Marks had templates built with 'over-book access,' allowing the doubling of injection slots.").

she may request changes to providers' scheduling templates, that she could modify the templates upon a doctor's requests or preferences, and that some templates, *including* Dr. Marks's template *specifically*, permitted overbooking appointments.[28] Indeed, the deposition transcript demonstrates that Vrabec's counsel had received *some* production revealing that Dr. Marks overbooked a high volume of appointments, though the parties do not tell us precisely what was produced.[29] As to Karchner, this deposition demonstrates that if Vrabec wanted more information on the overbooking practices of Drs. Marks or Hale, all she had to do was ask.

Third, as to the overbooked scheduling of injection procedures specifically, Vrabec does highlight some potentially relevant requests for production in her motion, but does not explain what, if anything, was withheld as to the number of overbooked injection procedures by Drs. Marks and Hales; in fact, Defendants contend that they "had already produced the yearly trends of injections and new patients for all providers, including new providers."[30] This information was likely sufficient for Vrabec to determine the role overbooked injection procedures may have had. Regardless, discovery obligations do not saddle opposing counsel with the responsibility to build Vrabec's case for her. The Court sees no reason why this

---

[28] Brief in Opposition, Doc. 85 at 6; Dep. of J. Karchner, Doc. 44-1 at 46:20-47:5 ("Some providers will allow over-books, and some providers prefer no over-books. Q. And when we are talking about over-books, I see repeatedly – does Dr. Marks allow over-books? A. Yes.").
[29] *Id.*
[30] Brief in Opposition, Doc. 85 at 4 n.2.

production was insufficient for Vrabec to argue that highly efficient injection procedures played a key role in explaining the productivity discrepancy between her and Drs. Marks and Hale, or at least, for Vrabec's counsel to elicit deposition testimony on the overbooking of injection procedures, to request discovery, or to file a motion to compel.

Fourth, to the extent Vrabec is arguing that she only recently learned about the high-efficiency nature of injection procedures, that is no fault of the Defendants.

Accordingly, there is no good cause to amend the scheduling order in this case because Defendants did not fail to comply with their discovery obligations in bad faith.[31]

Additionally, I note that even under Rule 15, there would be no reason to grant leave to amend the complaint. As I noted above, Vrabec offers three justifications to amend her complaint: reviving previously dismissed claims, introducing new claims, and reopening fact discovery.[32] But to revive old claims by amending her complaint, Vrabec would have to independently satisfy Federal Rule of Civil Procedure 60(b)'s relief from judgment requirements,[33] which she cannot do here as more than one

---

[31] Defendant asks this Court to "award reasonable costs, including attorney's fees, incurred by Defendant in responding to Plaintiff's Motion, in addition to any other sanctions this Honorable Court sees fir pursuant to LR 83.3.1(b). Should the Defendants still desire this relief, it is best sought in a separate motion.

[32] Motion to Amend Complaint, Doc. 83 at 9, 2, 4.

[33] *BLOM Bank SAL v. Honickman*, 145 S.Ct. 1612, 1619 (2025) ("[A] party seeking to reopen his case and replead must first satisfy Rule 60(b) on its own terms and obtain Rule 60(b) relief before Rule 15(a)'s liberal amendment standard can apply.").

year has passed since this Court's Order granting summary judgment in part.[34] And Vrabec's desire to introduce new Title VII claims would be futile because her amended complaint does not include allegations that she exhausted these claims.[35] No amendment is permitted where the opportunity to plead a case would be futile.[36]

Finally, because Defendants did not act in bad faith during discovery, Vrabec cannot reopen discovery; nor, in any case, would she need to amend the complaint to move to reopen discovery. So although there is a liberal pleading philosophy of the federal rules, there is no reason to grant leave to amend at this time.

Accordingly, **IT IS HEREBY ORDERED** that Tamara Vrabec's Motion to Amend/Correct Complaint (Doc. 83) is **DENIED**.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[34] *See* Order, Doc. 54 (granting summary judgment on some claims on April 4, 2024); Motion to Amend/Correct Complaint, Doc. 83 (filed April 9, 2024); Fed. R. Civ. P. 60(b)(2)-(3) (setting out bases for relief from judgment due to "newly discovered evidence" or "misconduct by an opposing party"); Fed. R. Civ. P.60(c)(1) (explaining that a motion under Rule 60(b) "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order"). No "exceptional circumstances" warrant applying Rule 60(b)(6) here either.

[35] *Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219, 221 (3d Cir. 2024) ("Before a plaintiff may file a lawsuit under Title VII of the Civil Rights Act of 1964, she must exhaust her administrative remedies by filing a charge of discrimination with the EEOC.").

[36] *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).